Zachary Z. Zermay (SBN 330221)
**ZERMAY LAW, A.P.C.**
3000 Coral Way, Suite 1115
Coral Gables, FL 33145
Telephone: (310) 752-9728
Facsimile: (844) 894-6204
E-Mail: zach@zermaylaw.com
info@zermaylaw.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Chen Cole, individually and on behalf of all others similarly situated;<br><br>Plaintiff,<br><br>v.<br><br>The Grand Academy of Ballet LLC, and DOES 1 – 10;<br><br>Defendants. | Case No. 2:25-cv-8607<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

## <u>CLASS ACTION COMPLAINT</u>

1. This is a class action brought by Plaintiff Chen Cole ("Plaintiff") on behalf of herself and similarly situated consumers against The Grand Academy of Ballet LLC ("Defendant") and DOES 1 – 10 arising from Defendant's unlawful telemarketing practices.

2. Defendant sends text messages promoting its ballet classes in the middle of the night and continues to send them after consumers—including Plaintiff—even after they clearly opt out.

3. These practices violate the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and implementing Federal Communications Commission ("FCC") regulations, 47 C.F.R. § 64.1200, *et seq*.

4. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to a Plaintiff, or to a Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

5. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

6. Unless otherwise stated, Plaintiff alleges that any violations by Defendant were knowing and intentional, and that Defendant did not maintain procedures reasonably adapted to avoid any such violation.

7. Unless otherwise indicated, the use of any Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of that Defendant named.

## BACKGROUND ON THE TCPA

8. In 1991, Congress passed the TCPA with bipartisan support to protect consumers' privacy rights—specifically, the right to be left alone from unwanted telemarketing calls and texts.

9. Congress described telemarketing robocalls as the "scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

10. The problem with receiving unwanted telemarketing communications is a problem that most people in this country, like Plaintiff, frequently face. For example, in 2024 alone,

approximately 52.8 billion robocalls were placed in the United States. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com/history/time (last visited September 10, 2025). The private right of enforcement of the TCPA is critical to stopping the proliferation of unlawful telemarketing. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, The FCC Has Fined Robocallers $208 Million. It's Collected $6,790, The Wall Street Journal, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803?msockid=1cea9b2e82236b7803368fe683846aaf.

11. The TCPA, through its implementing FCC regulations, affords special protections to consumers who request not to be contacted by specific companies.

12. One of the most prevalent bulk advertising methods employed by companies today involves the use of "Short Message Services" (or "SMS"), which is a system that allows for the transmission and receipt of short text messages to and from wireless telephones. Another similar service called "Multimedia Messaging Services" (or "MMS") is based upon and similar to the SMS system, but also permits the transmission of photos and videos via text message. According to a recent study, "[s]pam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds - from coupons to phishing schemes - sent directly to user's cell phones."[1]

[1] Amanda Lenhart, *Cell Phones and American Adults*, Pew Research Center (Sept. 11, 2025), https://www.pewresearch.org/internet/2010/09/02/cell-phones-and-american-adults/

13. SMS and MMS text messages are directed to a wireless device through a telephone number assigned to the device. When an SMS or MMS text message is successfully transmitted, the recipient's wireless phone alerts the recipient that a message has been received. SMS and MMS text messages are received virtually anywhere in the world.

14. Unlike more conventional advertisements, SMS and MMS message advertisements can actually cost their recipients money because wireless phone users must pay their wireless service providers either for each text message they receive or incur a usage allocation deduction to their text messaging or data plan, regardless of whether the message is authorized.

15. Moreover, the transmission of a spam SMS or MMS text message to a cellular device is distracting and aggravating to the recipient and intrudes upon the recipient's seclusion.

16. Since 2003, persons' cell phone numbers have been treated as "residential subscribers" under the TCPA. In Re Rules & Regulations Implementing the TCPA of 1991, 18 F.C.C. Rcd. 14014, 14039 (2003).

17. The TCPA requires telemarketers to maintain internal do-not-call lists and written policies, and to train their employees on compliance, so that consumers can exercise meaningful control over whether they receive telemarketing calls or texts. It further requires telemarketers to refrain from contacting people before 8:00 a.m. or after 9:00 p.m.

18. Despite these protections, unwanted telemarketing calls and texts remain among the most frequent consumer complaints reported to the Federal Communications Commission.

19. Private enforcement of the TCPA is therefore critical, because government collection of fines has historically been minimal, and consumers themselves are best positioned to stop unlawful practices through civil actions.

## THE PARTIES

20. Plaintiff is a natural person who is domiciled in the County of Los Angeles, California. 28 U.S.C. § 1391(c)(1). Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

21. Plaintiff is an individual and a "person" as defined by 47 U.S.C. § 153(39), and a citizen and resident of Los Angeles, California.

22. Defendant is a "person" as defined by 47 U.S.C. § 153(39). On information and belief, Defendant The Grand Academy of Ballet LLC maintains, and at all times mentioned herein maintained, its corporate headquarters in Los Angeles, California.

23. Defendant DOES 1 to 10 are alter egos, affiliates, related companies, and/or agents of Defendant The Grand Academy of Ballet LLC, and/or parties otherwise responsible for the actions and omissions alleged herein. At this time, Plaintiff does not know the true names and forms of Does 1 to 10 and therefore sues these defendants by fictitious names. Plaintiff alleges that these Doe defendants are responsible in some manner for the acts and omissions alleged herein and that Plaintiff's damages were caused by these Doe defendants. Once the true identities and forms of these Doe defendants are ascertained, Plaintiff will amend his Complaint accordingly.

24. Each of the Defendants named herein are and, at all material times, were the agents, subagents, servants, employees, representatives, and/or alter-egos of each other, and purported to act within the scope of such agency, service, employment or representation in performing the acts and omissions averred herein.

25. Each of the Defendants named herein acted in concert with each of the other

Defendants as co-conspirators, agents, representatives, employees or servants and are therefore jointly and severally liable for the claims set forth herein, unless otherwise alleged.

26. Plaintiff is informed and believes, and thereon alleges, that Defendant is an entity whose State of Incorporation and principal place of business is in the County of Los Angeles, State of California.

## **JURISDICTION AND VENUE**

27. The Court has federal question jurisdiction because this case arises out of violations of federal law. *See* 28 U.S.C. § 1331 and 47 U.S.C. § 227; *see also Mims v. Arrow Fin Servs., LLC*, 565 U.S. 368, 378-79 (2012) (holding that federal courts have federal question jurisdiction in private TCPA cases).

28. The Court has personal jurisdiction over the Defendants, and each of them as they regularly transact and solicit business in the City of Los Angeles, State of California. Venue in this District is proper under 28 U.S.C. Section 1391 because Defendants are subject to personal jurisdiction in this District.

29. Plaintiff is, and at all times mentioned herein was, the subscriber of the cellular telephone number (310) *** - 0872 (the "0872 Number"). The 0872 Number is, and at all times mentioned herein was, assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(l)(A)(iii).

30. On or about May 16, 2025, at 9:45 p.m. PST, Defendant sent Plaintiff a SMS message advertising its ballet classes. It is reproduced *infra*:




31. Plaintiff replied with an unequivocal opt-out: “Hi we no longer go to your studio, please put my number off your list. Stop texting me ever again, especially at night.”

32. Defendant ignored this request and sent additional promotional texts at 7:50 a.m. on May 20, 2025.

33. Plaintiff again replied “stop.”

34. Defendant continued messaging, showing it had no functioning internal do-not-call policies, training, or procedures.

35. Plaintiff and Class members suffered annoyance, invasion of privacy, and disruption of daily life.

## DIRECT AND VICARIOUS LIABILITY

36. Without having had the benefit of discovery to show otherwise, Plaintiff understands and therefore alleges that Defendant is directly liable for the SMS messages because they were made directly by Defendant.

37. Alternatively, if some or all of the calls were made by third-party/parties on behalf Defendant, then Defendant is vicariously liable for those calls.

38. On May 9, 2013, the FCC articulated that the doctrine of vicarious liability applies in the context of the TCPA. A seller may not avoid liability by outsourcing telemarketing to third party agents or vendors:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC*, 28 FCC Rcd 6574 at 6588 (F.C.C. May 9, 2013) (internal citations omitted).

39. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. Id. at 6587 n.107.

40. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.*, at 6593.

41. Defendant may have hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by third-party telemarketers that are currently unknown to Plaintiffs and only known to Defendant.

42. While Plaintiffs allege Defendant is directly liable based on what they know and understand at this time, if they learn the calls were made by agent(s) acting on Defendant's behalf, Plaintiffs will seek to hold Defendant vicariously liable for those calls.

## CLASS ALLEGATIONS

43. Plaintiff brings this action on behalf of herself and the following proposed Classes, under Federal Rule of Civil Procedure 23:

> **Class 1 – Internal Do-Not-Call Class**: All persons within the United States who, within the four years prior to the filing of this lawsuit through the date of class certification, received two or more text messages within any 12-month period, from or on behalf of Defendant, regarding Defendant's goods, services, or properties, to said person's residential cellular telephone number, after communicating to Defendant that they did not wish to receive text messages by replying to the messages with an opt-out instruction.

> **Class 2 – Quiet Hours Class**: All persons in the United States who, within four years prior to the filing of this action through the date of class certification: (1) were subscribers or customary users of a telephone number registered to an individual rather than a business; (2) received two or more text messages or calls by or on behalf of Defendant within any twelve-month period; and (3) those messages or calls were sent before 8:00 a.m. or after 9:00 p.m. local time at the recipient's location.

44. Plaintiff reserves the right to add administrative subclasses, or to amend the definition of the proposed class, during the lawsuit proceedings.

45. The following people are excluded from the classes: (1) any Judge or Magistrate presiding, over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5)

Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

46. **Numerosity**. The members of the proposed classes are so numerous that joinder of all members is impracticable. Plaintiffs reasonably believes that hundreds or thousands of people have been harmed by Defendant's actions. The names and phone numbers of the members of the proposed class are readily identifiable through records available to Defendant.

47. **Typicality**. Most members of the proposed class have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible. On information and belief, Defendant has called and continues to call people who are registered on the Do Not Call Registry. It is reasonable to expect that Defendant will continue to make such calls absent this lawsuit. Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to, whether Defendant called cell phone numbers at prohibited hours and/or whether it called cell phone numbers which the subscriber requested to not be called, and whether such calls violate the TCPA. Only to the extent required by law, Plaintiff's claims are typical of the claims of the proposed class members because Plaintiff's claim arose from the same practice that give rise to the claims of the members of the proposed class and is based on the same legal theories. Plaintiffs is not different in any relevant matter from members of the proposed class.

48. **Adequacy**. Plaintiff and her counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiff's interests do not conflict with the interests of the proposed class she seeks to represent. Plaintiff reserves the right to join unnamed class

members into this lawsuit.

49. **Competency of Class Counsel**. Plaintiff has retained lawyers who are competent and experienced in class action, TCPA litigation and consumer law. Plaintiff's counsel has the resources to litigate this class action, and Plaintiff's and counsel are aware of their responsibilities to the putative members of the class and will discharge those duties.

50. **Superiority**. A class action is superior to all individual lawsuits for this controversy. Joinder of all proposed members of the proposed class in one action is impracticable if not impossible and prosecuting hundreds or thousands of individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications. In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

51. **Commonality and Predominance**. There are numerous questions of law and fact common to members of the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the members of the Class are:

a. Whether Defendant sent text messages to Plaintiff and the Class members;
b. Whether Defendant sent text messages to Plaintiff and the Class members before 8:00 a.m. or after 9:00 p.m., at the time of the person's location,

c. Whether Defendant continued to send text message solicitations after opt-out requests;
d. Whether Defendant failed to honor Plaintiff's and the Class members' opt-out requests;
e. Whether Defendant implemented the requisite training of personnel under section 64.1200;
f. Whether Defendant maintains an internal do-not-call list and instructs its employees on how to use the list;
g. Whether Defendant maintains the required policies and procedures under section 64.1200; and
h. Whether Defendant is liable for damages, and the amount of such damages.

52. Defendants or any affiliates, subsidiaries, or agents of Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

53. Moreover, on information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

**Count I**
**Violation of 47 U.S.C. § 227(c) And 47 C.F.R. § 64.1200(d)**
**<u>(Class 1: Internal Do-Not-Call Class)</u>**

54. Plaintiff re-alleges and incorporates all the allegations set forth *supra*.

55. Plaintiff brings this Count individually and on behalf of all others similarly situated.

56. The TCPA delegates rulemaking to the FCC. 47 C.F.R. § 64.1200(d) provides:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
> 1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
> 2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
> 3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf

> such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

57. Plaintiff brings this Count individually and on behalf of all others similarly situated. Under 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

58. Plaintiff and the Class Members are residential telephone subscribers who received more than one text message made for purposes of telemarketing or solicitation purposes from Defendant, who has failed to implement the requisite procedures and personnel training as demonstrated by its failure to honor opt-out requests.

59. Plaintiff and the Class members made requests to Defendant not to receive texts from Defendant. Plaintiff and the Class Members revoked any consent they may have provided Defendant by responding with opt-out instructions.

60. Defendant continued to text message Plaintiff and the Class Members to harass them

into purchasing ballet lessons from Defendant.

61. Defendant failed to honor Plaintiff's and the Class members' opt-out requests.

62. Defendant's refusal to honor opt-out requests is indicative of Defendant's failure to implement a written policy for maintaining a do-not-call list and to train its personnel engaged in telemarketing on the existence and use of the do-not-call-list.

63. Plaintiff and the Class members are informed and believe that Defendant has not instituted procedures for maintaining a list of persons who request not to receive telemarketing calls or text messages.

64. Plaintiff and the Class members are informed and believe that Defendant does not have a written policy, available upon demand, for maintaining a do-not-call list.

65. Plaintiff and the Class members are informed and believe that Defendant does not train its personnel engaged in any aspect of telemarketing in the existence and use of the do-not-call list.

66. The details and specific facts regarding Defendant's failure to maintain the required policies and procedures, as well as personnel training, are solely within Defendant's knowledge and possession.

67. Defendant has violated 47 C.F.R. § 64.1200(d) by failing to honor opt-out requests, failing to maintain the required policies and procedures, and failing to train its personnel engaged in telemarketing.

68. Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the Class members are entitled to an award of $500.00 in statutory damages for each and every negligent violation.

69. Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the Class members are

entitled to an award of $1,500.00 in statutory damages for each and every knowing or willful violation.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a. An order certifying this case as a class action on behalf of the Class as defined above, and appointing Plaintiff as the representative of the Class and Plaintiff's counsel as Class Counsel;
b. An award of statutory damages for Plaintiff and each member of the Class as applicable under the TCPA;
c. An order declaring that Defendant's actions, as set out above, violate the TCPA;
d. An injunction requiring Defendant to comply with 47 C.F.R. § 64.1200(d) by (1) maintaining the required written policies; (2) providing training to their
e. personnel engaged in telemarketing; and (3) maintaining a do-not-call list; and
f. Such further and other relief as the Court deems necessary.

**Count II**
**Violation Of 47 U.S.C. § 227(c)(2) and 47 C.F.R. § 64.1200(c)(1)**
**(Class 2: Quiet Hours Class)**

70. Plaintiff re-alleges and incorporates all the allegations set forth *supra*.

71. The FCC's regulations provide in relevant part that "no person or entity shall initiate any telephone solicitation to: Any residential telephone subscriber before the hour of 8 a.m. or after 9 p.m. (local time at the called party's location). 47 C.F.R. § 64.1200(c)(1).

72. Defendant transmitted an SMS message to Plaintiff that was received before 8:00 a.m. PST, despite Plaintiff having a California area code and residing in the State of California.

73. Defendant transmitted an SMS message to Plaintiff that was received after 9:00 p.m., PST, despite Plaintiff having a California area code and residing in the State of California.

74. The SMS messages that were transmitted before 8:00 a.m. or after 9:00 p.m. made to Plaintiff and the putative class, were in violation were in violation of 47 C.F.R. § 64.1200(c)(1).

75. As a result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff and the putative class to an award of statutory, actual and trebled damages.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a. An order certifying this case as a class action on behalf of the Class as defined above, and appointing Plaintiff as the representative of the Class and Plaintiff's counsel as Class Counsel;
b. An award of statutory damages for Plaintiff and each member of the Class as applicable under the TCPA;
c. An order declaring that Defendant's actions, as set out above, violate the TCPA;
d. An injunction requiring Defendant to comply with 47 C.F.R. § 64.1200(c)(1) by ceasing to transmit SMS and/or MMS communications to residential subscribers before the hour of 8 a.m. or after 9 p.m.; and
e. Such further and other relief as the Court deems necessary.

Dated: September 11, 2025

**ZERMAY LAW, A.P.C.**

By: Zachary Z. Zermay [signature]
Zachary Z. Zermay, Esq.
Attorneys For Plaintiff
*Chen Cole and the Putative Class*